public amenities that are offered in buildings, he's been able to, for the entirety of his life, walk through these buildings and traverse these buildings on his own without the assistance of another individual. He walks into the Neal Smith Federal Building. They inform him it's indeed not his place of voting, and he walks out and begins heading east. The east side of the Neal Smith Federal Building has what we've classified as a sidewalk that leads to the street level. The exit of the Neal Smith Building on the east side sits approximately, well over two feet from the sidewalk below and the street level. It looks like a sidewalk, it looks like a, it goes alongside the stairs, and by the end it's above, it's above, way above the top stair. It's, it's not really a platform, what is it, I can't remember what the, what the opposing counsel called it, but it seemed to be a much more accurate description than to call it a walk. Well, I think when you look at a judge, from the perspective of an individual that's walking on that cemented, you know, whatever you want to call it, there's no indication that separates the cement area from the, what you call the sidewalk itself, from the side areas. So, as he's walking, it's... But for a sighted person, and I understand that that's not, Mr. Alberti wasn't, but you would know if you walk, if you walked out on it, and looked down and saw you were getting way, you were remaining way above a staircase, you would not assume, you would not, I don't think a sighted person would assume it was that he or she was on a, on a, what was intended to be a walkway. Well, I think that, Judge, I think your point may very well be true when you get all the way up to the edge of it, but from the perspective of leading up to that entrance, when you're back, let's just say 10 feet from it, there's no distinction when you look down between, you know, what is the walkway and what is the side concrete area that just seems to be this paved area, meaning that the patterns on the concrete itself don't change. It's all flat. I understand your point that, you know, a person is looking down, watching, you know, looking specifically where they're going. You know, perhaps that person does go to the stairs themselves, but I think it's important to note that this is a federal building that's open to the public, and it does hold itself out to be accessible to all individuals, disability or no disability. And in this particular case of Mr. Alberti, you know, he doesn't have the luxury that other people do, meaning he can't see certain depth perceptions, and in his case, as he's leading up to this, it's indistinguishable to him. And it's caused this trap in that he falls over two feet onto the cement below and gets seriously injured as a result. And, you know, looking at the district court's order on this, I think there's essentially three areas that we disagree with, and that should be the basis of overturning and giving Mr. Alberti his day in court. The first point would be on the motion to dismiss standard itself. In the order itself, the district court had indicated that sufficient facts were not pled to bring a plausible claim. I just don't think that's true. In this particular case, we filed a 73-paragraph petition. It encompasses 68 pages, and there's a specific paragraph that talks about and alleges that the United States established policies to make its building, quote, fully accessible to all people. Now, pursuant to the motion to dismiss standard, we're entitled to that inference. We don't have to cite the specific policy itself or the specific law that governs. You misstated the standard, carefully omitting Iqbal and Trombley. I'm sorry? The standard does not stop with whether it was asserted, whether elements of the claim were asserted. It has to be plausible. It doesn't only have to be stated, it has to be stated plausibly. And that was the basis for the district court's opinion. And you want to extract from the first half of the equation and say, aha, there's an error of law. I think you ought to move on to the key issues, frankly. Yes, Your Honor. I would just respectfully indicate that in the cases that we've cited in our briefing, there's an exception to that. And the exception would be that when there's discovery outstanding, we have the ability to look to review the GSA's internal policies to see if, in fact, there are specific policies. Are you still arguing the standard? What's your best Eighth Circuit case for the proposition that this falls into an exception to Iqbal and Trombley? Well, Your Honor, I don't have any specific Eighth Circuit case, but I would just respectfully present to the court that the other courts that have cited this provision that discovery should be allowed. Give me a certain court that says we don't have to worry about Iqbal and Trombley because we're looking at the discretionary. We can have discovery for that. Right. And I don't think you have to ignore that standard. I just think that the standard that we're... You have to satisfy it. And the district court thought you didn't. That's correct, Your Honor. And because of what we pled, because of the plausibility that there's specific provisions of the GSA's policies, and because we're entitled to the reasonable inferences pursuant to Trombley, I think that the sufficiency of what we've pled in the petition in itself... But your argument is that... Your argument is not the district court applied the wrong standard. The district court should have said, should not have concluded that pleading the existence of policies wasn't enough to satisfy the plausible standard. That's exactly right, Your Honor. That's exactly right. When people brief it this way, it makes it very hard to get to what matters. So, Counsel, why do you believe the district court's interpretation and application of Section 3312 was erroneous? Well, Your Honor, I believe that it's inconsistent with the underlying intent of what that code section was established to do. And what that code section was established to do is to implement these national standards to federal buildings themselves. And when you go and you look at those national standards, in this case specifically the International Building Code, it talks about this very situation. Meaning that when a building is amended or changed, or things are done to that specific building, those changes need to be compliant with the code themselves. So to read into it like the district court did as far as what words apply to after this 1989 implementation date, I think it's inconsistent with what the intent was. The intent was to make it so that the GSA and all of its buildings complied with the national standards themselves. That's an intent argument. How about the text? Does the text support your interpretation, I guess is what I'm asking. I think it does support my interpretation. And I think the specific secondary sources that the district court cited talked about, and they even quoted this, generally the interpretation that they presented was the situation or how you should read text. Meaning that the first two indicators in the limiting language only apply to what was immediately before it. But in this particular circumstance, I don't think it applies because you have to read the text of the statute itself in its totality. And when you do that, I think it doesn't fit within the context. Even if I were to agree to you about the last antecedent rule and all that, and it does apply to alterations. On the face of it, it just seems to give the administrator a lot of discretion and fits perfectly within the discretionary function. It shall to the maximum extent feasible as determined by the administrator as the administrator decides is appropriate. That just screams discretion to me. I would respectfully disagree, Your Honor. And I think that when you look at the language of the statute itself, I think it talks about the plausibility of it. You know, when you take a step back and look at what is the discretionary function exemption and what is it for? You know, in considering it, what the Supreme Court did in U.S. versus Gaubert, or Gaubert, however you pronounce it, gave this particular scenario. Meaning an individual can be driving a car and that may be the discretion as to, of course, there's discretion involved in how you drive a car, but that doesn't mean that the judgment and or choice applies to when he negligently drives the vehicle itself. And I think that gets to the root of our position here. Meaning that when the General Assembly chose to make these concrete pillars and this concrete drop-off, they had the discretion to be able to do that. But once they did that, they didn't have the ability and the discretionary function does not apply to them being negligent in the implementation of it itself. And I think that's the root of our argument. And, you know, I think it circles back to some of the case law that the district court itself cited. Meaning the district court cited a variety of cases in which failure to warn fell within the exception. Meaning the discretionary function exemption. And the case law on this, the district court case law, is kind of all over the place because it's fact... On the failure to warn, distinguish Mettner for me. What case, Your Honor? I'm sorry. Mettner. Our Mettner decision. The failure to warn of a slope. Somebody fell down. I think there's a couple ways to distinguish it. Number one... Just on the warning. Your argument that the warning is not a policy decision. Correct. In that case, that was a natural condition. It wasn't a condition created by the General Assembly itself. Well, yeah, it was a walkway along a slope, right? The argument was there had to be more warning. I may be getting my cases mixed up, Your Honor, but I guess another way to distinguish it in this case, we're talking about a specific one-off location and drop-off. And I think that's distinguishable in that, as is indicated in the appendix, subsequent to this incident happening, the only thing that was done to remedy this thing, or the only thing that needed to be done, was to add additional railing that they already had in place. And when you look at the case law, that's both cited in our briefing and citing in the appendix in our briefing before the district court, the court talked about that when you have these one-offs, when you have these particular specific situations, it doesn't bring the policy considerations into play sufficient enough to make the discretionary function exemption applicable. Your Honors, if I may, I'd like to reserve the remaining time. What case were you just talking about? I didn't cite a specific case, Your Honor. You said the court said it, and then you stated a conclusion that obviously wasn't a district court in this case. Sure, I'll give you an Eighth Circuit case, Your Honor. It's CRS by DBS, and that can be found at Volume 11 of the Federal Reporter, Third Edition, starting at page 791. Thank you. Mr. Fay? Good morning. May it please the court. Counsel. My name is David Fayth. I'm an assistant United States attorney representing the United States in this matter. The sole issue before the court is whether the United States has waived its sovereign immunity, which means, in this case, strictly construed and has the United States non-waiver of discretionary function, does that apply? And the standard for the discretionary function exception is well-established and not in dispute under Gobbert, among many other cases, that one, element one, that there's an element of judgment and choice, and it's not mandated by relevant law, regulation policy, and two, that it's susceptible to policy analysis. So looking at the first element, the appellant has cited to nothing in their complaint, which would constitute a mandatory requirement under any federal law or policy that the United States had to put in a railing or a barrier or a warning or something similar to prevent someone from walking along this concrete strip that abuts the stairs at the Neilspith Federal Building. You know, we did go off on this rather big red herring about section 1009.7.2 of the International Building Code, which says that you need to have seven inches, not more than seven inches, between the treads of stairs. Stair risers can't be more than seven inches. Can this issue even be decided on the pleadings, given that we don't know whether the east entrance of the Neilsmith Building was altered after 1989, and if so, we don't know whether that alteration complied with the Model Building Code? I believe you can, based on Judge Ebbinger's analysis of the statute, which was that the nationally recognized building codes, including International Building Codes, apply for construction for which money was first appropriated prior to 1989. So it's my understanding. Doesn't the text of the statute refer to projects? I think the court interpreted it as the original appropriation for the building, but I think it also applies to projects for construction or alteration. Sure. Well, I think my understanding of Judge Ebbinger's ruling was that it was buildings for which funds were first appropriated prior to September 20th, 1989, regardless of when the construction was altered. So the building is just grandfathered. If it was built in 1776, it's grandfathered forever, regardless of any alterations or construction. That was my understanding, but I also think that even if you found that the International Building Code applied, there's still no mandatory requirement that's been cited to put up a bearing or railing. There's a complete disconnect between this seven-inch stair thing. That may be true, but can we decide that on the pleadings? Yes, you can certainly decide that the specifically cited 1009.7.2 does not constitute a mandatory requirement to put in a railing without any... But there are a number of recognized model building codes, right? There are, but the appellants would have to have cited to them in their pleading in order to survive motion to dismiss on Iqbal and Twombly. It's not enough that there might be some law somewhere in the world that could have cited it, that they're restricted to what they actually could say. It's got to be plausible. They don't have to cite to the exact statute. Perhaps not, but they at least need to point to something from which the court could reasonably infer that there's a violation here. You know, and if it's just there might be some law somewhere that says you can't do that, I mean, then no case would survive motion to dismiss on discretionary function because there could always be some law somewhere the lawyers didn't find. And, you know, then I think because there's this recognition that there hasn't actually been cited any law that would have been violated here, the appellant falls back on this argument that, well, we need some discovery because GSA might have some secret internal building requirements. But I would submit to you that this doesn't meet Iqbal and Quambley because, you know, under Iqbal and Quambley, it's not enough to merely raise the possibility. You have to plead specific facts from which the court could reasonably conclude in this case that there is. But a fact is different than pleading a building code provision, right? Well, facts from which it could be reasonably concluded that a provision of law that has been invoked was violated. And I actually think, you know, the appellant cited this D.C. case, Sledge v. United States, you know, an attempt to argue that there should be discovery. And I actually think it cuts the other way, even if you found it persuasive. Because in that case, we were dealing with a prison and we knew specifically that the prison had internal policies. And the plaintiff in that case had specifically alleged that there were binding directives to be found in program statements, institutional supplements, policy handbooks, guidelines, training manuals, work schedules, work assignments, policy memorandum, post orders, other orders or instructions from the warden. I read that all because that shows that they were pleading the existence of specific documents that they said you could find these policies. And they weren't just saying there might be some policies out there somewhere. And so in this case, we're well below the Iqbal Twombly standards because they aren't even suggesting there's a particular document that exists. They're just saying there might be, they're saying let us go on a fishing expedition because there might be some fish there. And this is another where if that's true, there's no case that would survive dismissal because maybe there could always be some internal policy hidden away. But without some... Counsel, assuming hypothetically the district court misconstrued Section 3312, might that affect the district court's analysis of plausibility of the complaint? I truly do not believe so. Because again, there's those two steps of does the International Building Code apply at all? But then if it does apply, does the International Building Code prohibit the alleged negligence? The design and construction negligence alleged in not putting in a railing with a 26-inch... Well, it's my understanding that it only has to be one of the nationally recognized model building codes, not just that particular one. And we don't know what the other ones say. That's true, though. It also says, I believe it leaves discretion to the agency as far as which building code to use in building their buildings. So I don't think they can have it both ways where they get the best of every national building codes. But if we don't know whether it was altered after 1989, how would we know which building code they used? Well, again, I think the burden falls on the plaintiff to cite to a law that's been violated, to cite to a requirement. I don't think it falls upon the government to sort of negate the existence of any possible requirement out there. You know, it's the appellant's complaint that we're challenging on motion to dismiss. And I also think it's relevant... The footnotes that Judge Ebbinger put in about 40 USC 1312F, an action may not be brought against the federal government for failure to meet the requirements of inter alia one of these building codes. I think that's an alternative basis that you could find in the government's favor. That here, Congress is stating explicitly, you know, never mind, not only we're not waiving sovereign immunity, but even if there is a requirement, a non-discretionary requirement, you still can't sue the government. So it would be a very odd result to say  actually has violated a provision of a mandatory code. But, you know, you can when, as in this case, there's been no violation actually cited to. And then we get to the public policy question. And I think precedent is clear that the GSA's design and construction decisions implicate policy and more generally the decisions to warn, decisions to put in barriers. There are numerous cases along those lines. Your Honor mentioned METR in which the Army Corps of Engineers actually removed a section of railings that had already been there. And they removed it because they contracted to have it replaced. And it was more efficient to remove everything. That's, the Corps of Engineers is a different kettle of fish than GSA. What bothers me about the breadth of your argument is that it basically says everything GSA does is a policy decision. It takes, it gives GSA a blanket discretion bar to Tort Claims Act. Because GSA is obligated to consider costs. Well, respectfully, Your Honor, I think that's only really true when it comes to construction and design type decisions. You know, certainly if it were something like, you know, failure to clean up a spill on the floor or conduct maintenance. But this is the design itself, you know, what safety precautions to put into the design. And I would suggest there, yes, it does have national implications any time the GSA decides how to balance the safety of the public on government constructed buildings versus costs and aesthetics. So within this context, within the design construction context, I believe it is a very broad, broad exception. You know, and as far as this notion that having decided to do something, that once the government decides to do something, that then DFE no longer applies. Well, design construction, we're also talking warning. We're talking basic safety precautions. Sure, I think. And then, you know, GSA says, well, we could, you know, we could have made it, we could have eliminated some risk in the way you access our parking ramp. But we had an expert tell us that would cost $50,000. And so we decided we wouldn't do it. And your argument gives them a carte blanche FTCA exception. I think if the type of design decision, for instance, that the ramp, if that was a design decision that would have cost implications everywhere the United States puts in a ramp, then absolutely DFE would be implicated. No, but let's just say that there was no design construct claim. It was strictly a failure to warn claim. Sure. Okay, you could have done it more expensively. You did it the cheap way, but you didn't even tell me that there was a risk. Well, I think DeMary, the Eighth Circuit case DeMary is instructive on this point, where... Was that GSA? No, that was Department of Interior. It was, that was aerating a lake. I just think they're different. Well, respectfully, Your Honor... GSA, everybody, everybody go, almost can't avoid these days going in and out of government buildings. A lot of people go into national parks as well, Your Honor. But the mission is different. Granted, but I'm not seeing anything in the case law or in the interpretation that suggests that there's some sort of GSA limitation to the application of the discretionary function exception, and that's where I think DeMary, well, granted it was a different agency, is very interesting because the United States created a hazard by aerating a lake, causing it to be melted in the winter. A woman ran her snowmobile into it and died. And in the suit, they were alleging that, well, having created it, you had to warn. And the U.S. actually had put in a warning, but the plaintiff was saying it wasn't good enough. And the circuit rejected both pieces of those arguments. They said, A, there was no obligation to warn in the first place. And B, having put it in, there was discretion in terms of how to warn. And it was based on these same principles of weighing factors that we've been talking about. So by the precedent of the circuit, this, of course, should be affirmed. Thank you. I'll give you 30 seconds. Oh, seconds.  Judge Loken, I think you hit the nail on the head, meaning that if you don't create the situation here, meaning there's a two-block analysis, meaning the discretion as to what to construct and what to put in versus the idea of not being negligent once that policy's implementation blows the Federal Tort Claim Act out of the water for the GSA, and there's essentially no situation in which the discretionary function does not apply. For those reasons, we'd ask that the district court be reversed. Thank you, counsel. Case has been well briefed and argued, and we'll take it under advisement.